■ THE PENN TRAFFIC COMPANY, Appellant-Respondent, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Respondent-Appellant. [914 NYS2d 534]—

Appeal and cross appeal from an order of the Supreme Court, Onondaga County (Deborah H. Karalunas, J.), entered March 4, 2010 in a breach of contract action. The order denied the motion of plaintiff for partial summary judgment and granted in part and denied in part the cross motion of defendant for partial summary judgment.

It is hereby ordered that the order so appealed from is unanimously modified on the law by granting the cross motion in its entirety and dismissing the complaint and as modified the order is affirmed without costs.

Memorandum: Plaintiff commenced this breach of contract action seeking, inter alia, all costs incurred by it in connection with two investigations conducted by the federal government against several of its employees, pursuant to an "Executive and

Organization Liability Insurance Policy" issued to plaintiff by defendant. Plaintiff is a Delaware corporation that operates a chain of supermarkets in three states, including New York, and it is undisputed that the policy at issue provided coverage to plaintiff for, inter alia, the costs associated with defending certain of its employees who commit wrongful acts, as defined in the policy. The policy was a two-year claims made policy, effective June 29, 2002. Thus, coverage was limited to claims made and reported during the policy period, with a 60-day extension for a "Discovery Period," extending the coverage period to the end of August 2004. In August 2002, plaintiff learned that an employee at Penny Curtiss, its wholly owned subsidiary, was being investigated by federal authorities for making false accounting entries (hereafter, Penny Curtiss investigation). The employee had overstated inventory and, as a result, plaintiff was required to issue revised financial statements for the years 1999 to 2002. By letter dated October 7, 2002, plaintiff provided defendant with notice of "circumstances which may reasonably be expected to give rise to a claim being made against" plaintiff and its named insureds. Plaintiff did not, however, request coverage at that time for the costs relating to the defense and investigation of the employee in question or Penny Curtiss.

Approximately two years later, federal authorities began investigating the misuse of promotional allowances by two high-level executives employed by plaintiff, based on allegations they submitted false financial statements that prematurely recognized the promotional allowances and thereby inflated stated earnings (hereafter, promotional allowances investigation). The executives in question worked directly for plaintiff but not Penny Curtiss. In August 2004, several months after the Securities and Exchange Commission (SEC) had issued subpoenas to two of plaintiff's employees in connection with the promotional allowances investigation, plaintiff sent a letter to defendant advising that it was cooperating with the investigation, "which [t]he Company believes . . . is currently focused on gathering information involving industry-wide accounting practices." The letter further stated that "[a]t this time [plaintiff] is not aware of any claims against the Company as a result of this matter." The SEC thereafter issued subpoenas to several other of plaintiff's employees. On April 27, 2006, almost two years after the policy expired, plaintiff for the first time requested reimbursement for the defense costs associated with the two investigations, and defendant disclaimed coverage on the ground that plaintiff failed to make a claim within the policy period, as extended by the 60-day discovery period. This action by plaintiff ensued. Prior to discovery, Supreme Court denied plaintiff's mo-

tion for summary judgment and granted in part defendant's cross motion for partial summary judgment, dismissing the complaint with respect to the defense costs incurred in connection with the promotional allowances investigation. All that remained of the complaint thus concerned the defense costs associated with the Penny Curtiss investigation. Upon this appeal by plaintiff and cross appeal by defendant, we agree with defendant that the court should have granted its cross motion in its entirety and dismissed the complaint.

As plaintiff acknowledges, it did not make a claim for any defense costs within the two-year policy period, and thus the issue of coverage turns on whether the relation-back provision of the policy applies. Pursuant to that provision, a claim made after the policy period will be honored if the insured provided written notice during the policy period of circumstances that could "reasonably be expected to give rise to a Claim being made against an Insured, . . . with full particulars as to dates, person and entities involved." We reject the contention of plaintiff in support of its appeal that its letter of October 7, 2002 provided sufficient notice of the circumstances relating to the promotional allowances investigation, inasmuch as that investigation did not commence until approximately two years later. The letter in question provided defendant with notice of the Penny Curtiss investigation only, and, as the court properly determined, that investigation was separate and distinct from the promotional allowances investigation. The two investigations involved different employees, different accounting irregularities, and different time periods, and it therefore cannot be said that notice of the Penny Curtiss investigation constitutes notice of promotional allowances investigation as well. Thus, contrary to the contention of plaintiff on its appeal, the court properly granted those parts of defendant's cross motion with respect to the promotional allowances investigation.

We agree with defendant on its cross appeal, however, that the court erred in failing to grant its cross motion in its entirety, and we therefore modify the order accordingly. Although the SEC subpoenas of March 31, 2004 concerning the Penny Curtiss investigation were issued to plaintiff's employees within the policy period, it is undisputed that plaintiff failed to provide notice of the claim to defendant with respect to the two subpoenas until late April 2006, almost two years after the policy expired. Indeed, as previously noted, by letter to defendant in August 2004 plaintiff affirmatively represented that it had no claims to date. "The insured's failure to satisfy the notice requirement constitutes 'a failure to comply with a condi-

tion precedent which, as a matter of law, vitiates the contract' " (*Great Canal Realty Corp. v Seneca Ins. Co., Inc.*, 5 NY3d 742, 743 [2005], quoting *Argo Corp. v Greater N.Y. Mut. Ins. Co.*, 4 NY3d 332, 339 [2005]). In determining that an issue of fact exists whether plaintiff provided timely notice of the March 2004 subpoenas to defendant, the court erred in relying on cases involving policies that required the insured to provide notice of claims "as soon as practicable" (*see e.g. Matter of Allstate Ins. Co. [Earl]*, 284 AD2d 1002, 1003-1004 [2001]). Here, the policy contains different notice requirements. It provides that notice must be given "as soon as practicable . . . , but in no event later than . . . the end of the Policy Period or Discovery Period," which, as noted, ended in August 2004, well before plaintiff notified defendant of the subpoenas. We thus conclude that plaintiff's failure to comply with that requirement vitiates the contract with respect to the subpoenas issued by the SEC on March 31, 2004 (*see generally Rochwarger v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 192 AD2d 305 [1993]).

Finally, we reject the contention of plaintiff that its failure to give timely notice of the claim arising out of the March 2004 subpoenas should be excused because it did not realize that the subpoenas were covered under the policy until after the deadline date. The policy unambiguously includes the subject subpoenas within the definition of potential claims, and plaintiff's unilateral mistake in reading the policy cannot serve as a basis for expanding coverage. "[O]ne who executes a plain and unambiguous [contract] cannot avoid its effect by merely stating that [he or] she misinterpreted its terms" (*Koster v Ketchum Communications*, 204 AD2d 280 [1994], *lv dismissed* 85 NY2d 857 [1995]). Present—Scudder, P.J., Carni, Lindley, Pine and Gorski, JJ.